THE NATIONAL BANK OF AUGUSTA *et al. vs.* BONES, surviving partner.

1. Where iron works were leased on certain terms provided in the contract, among which was a stipulation that the property was not to be encumbered for more than $25,000, and that the owners should not be personally liable beyond the property specified; and where the lessee bought corn and gave an acceptance therefor, signed by him as lessee, and subsequently suit was brought therefor against the executors of one of the owners, who had died, and the other owners, the lessee was not a competent witness, either at the common law or under the Code, to prove that the lease had been rescinded, that the owners had appointed him their agent, that while so acting, the corn was purchased for the benefit and use of the owners, and that he did not disclose his agency.

(*a.*) This case differs from that in 64 *Ga.*, 236.

2. Certain iron works were held by a trustee for the benefit of certain beneficiaries. A person made a written proposition to the trustee to lease the property on substantially the following terms: The lessee to keep the property for two years at the rate of $3,600.00 per year, payable quarterly; possession to be given immediately; any rent charges to commence April 1st thereafter; the rent to be paid on condition that the running of the furnace made a sufficient net profit to warrant him in so doing; he to be allowed to charge $100.00 per month for compensation, to be included in the expense account before arriving at the net profit; if the net profit was more than the rent, the overplus was to go to him; if less, the rent was to be rebated to that amount; there was to be furnished to him not more than $25,000, at the rate of seven per cent interest; if the business should turn out unprofitable, he was to be saved harmless from any balance of the $25,000 that might be due. The real owners met and accepted the proposition in writing, and the trustee was directed to lease the property on the terms proposed, upon condition that the property was not to be encumbered to a greater amount than $25,000, and that no personal liability whatever should attach to the owners beyond or to a greater extent than that specified:

*Held,* that the contract was one of lease, and neither created a partnership between the owners and the lessee nor constituted the latter the agent of the former; nor were the lessors personally liable for any debt contracted by the lessee.

3. The requests to charge on behalf of the plaintiffs in error should have been given, except the third, which was to the effect that a written contract of lease cannot be rescinded verbally, without a change of possession, or without a writing dispensing with the same, signed by the lessors. This request might have been proper under the requisite qualifications.

4. The evidence did not authorize the verdict, even if the testimony of the lessee were properly in. He did not show that the lessors consented or agreed that he might surrender the lease, nor how he became their agent; and the owners, each owning a particular interest in the property, could not bind each other by the appointment of an agent.

January 12, 1886.

Witness. Contracts. Principal and Agent. Leases. Partnership. Charge of Court. Before Judge Eve. City Court of Richmond County. March Term, 1885.

To the report contained in the decision, it is necessary to add only that the following were among the grounds of the motion for a new trial:

(1.) Because the court admitted the testimony of William E. Jackson, Jr., to the effect that William E. Jackson, Sr., was the controlling spirit in the matter, was president of the bank, which was also interested, and that he and the bank owned twenty-six-fiftieths of the interest in the enterprise. [It is stated that it was proposed to prove a parol revocation of the original contract, and the objection was that Jackson, Sr., was dead.]

(2.) Because the court refused to give in charge each of the following requests:

1st. " If it appears that W. E. Jackson, Jr., was bound as acceptor of plaintiff's draft for the amount sued for prior to this suit, he is not a competent witness to prove that the debt is that of defendants, and thus discharge himself from liability, and it must be proved by other testimony."

2d. " If the jury find that W. E. Jackson, Jr., was in possession of the Stonewall Iron Works, as a tenant, under a written contract, for two years, this relationship cannot be changed and the tenancy abrogated, except by mutual consent of lessor and lessee, acted upon by both parties from that date."

3d. " A written contract of lease cannot be rescinded verbally without a change of possession or an instrument in writing dispensing with the same, signed by the lessor."

4th. " Whether W. E. Jackson, Jr., was lessee or not, if he entered into possession upon an agreement that only the property itself was to be chargeable for expenses of running, then no contract could be entered into that would impose an individual liability beyond the property, without personal consent of each defendant."

5th. " If the goods sold were for the benefit of the prop-erty in Alabama, and the trust deed to Newberry was re-corded there before the sale, there can be no recovery *in personam* in Georgia, but the laws of Alabama govern the transaction." [With this request were submitted sections 2186 (1577), 2199 (1590), 2201 (1592), of the Code of Alabama, containing the following provisions :

" *Certain trust estates may be created, vesting the legal title in the trustee.*—Nothing in the preceding section contained shall prevent the conveyance of real or personal property, or the issues, rents and profits thereof, to another in trust for the use of the grantor or of a third person, or his family, or for any other lawful purpose ; but in such case the legal title vests in the trustee.

" *Trusts in land cannot be created, except by writing, &c., implied or constructive trusts excepted.*—No trust concerning lands, except such as results by implication, or construction of law, or which may be transferred or extinguished by operation of law, can be created, un-less by instrument in writing, signed by the party creating, or declar-ing the same, or his agent, or attorney, lawfully authorized thereto in writing.

" *The record of a declaration of trust is notice to all persons.* When a trust is created, or declared, by any such instrument in writing, the recording thereof in the county where the lands lie is equivalent to actual notice to every person claiming under a conveyance made, or lien created, after such recording."]

6th. " If the jury find that the Stonewall Iron Works was, at the creation of the indebtedness sued on, a trust estate valid under the laws where the property was located, then only the property can be charged for liabilities created for its benefit, and action will not lie against the beneficiaries to bind them personally in the first in-stance."

7th. " If you find that Mr. William E. Jackson treated with the plaintiffs in the contraction of this debt as lessee,

the plaintiffs were put upon inquiry as to what his con-tract or lease with the owners was, and are bound by the terms of the contract."

8th. " Before you can find the defendants liable, you must find that the defendants agreed that Mr. William E. Jackson should be their agent.    It is not enough that Mr. Jackson determined to be the agent of the defendants ; it must be shown that each of the defendants consented to this thing.    Before there can be an agency established, the minds of the parties—that is, the minds of these de-fendants and of Mr. William E. Jackson—must have come into complete accord, the defendants consenting to exactly the same thing which Mr. Jackson intended or proposed. If one person consents to a thing, and another to a thing in any degree different, so their wills do not completely coincide, this does not create a contract between them, and to prove a contract, it is necessary to prove the con-sent of both sides.    In this case, before an agency can be deemed to be proved, the consent of the defendants to the agency must be proved ; without proof of this consent, you cannot find the defendants liable.    The stipulation that the said J. T. Newberry, as trustee, is not to encumber said property to a greater amount than $25,000, and that no personal liability whatever attaches to the owners beyond or to a greater extent than the property, is binding on Mr. Jackson and Mr. Newberry and third parties ; and before Mr. Jackson can bind the defendants to any personal lia-bility, there must have been a rescission of this stipulation and an agreement on the part of defendants to allow Mr. Jackson to bind them personally.    The proof of agency of Mr. Jackson must be proved as to each one of the defend-ants, and each defendant must be discharged, unless this proof is made as to him."

The motion was overruled, and the defendants excepted.

FRANK H. MILLER ; J. GANAHL ; TWIGGS & VERDERY, for plaintiffs in error.

The National Bank of Augusta *et al.* *vs.* Bones, surviving partner.

J. C. C. BLACK, for,defendant.

BLANDFORD, Justice.

The plaintiffs in error, who had become the owners of the property of the Stonewall Iron Works, situated in Cherokee county, Alabama, on the 20th November, 1880, conveyed the same to J. T. Newberry, as trustee, with power to sell for cash or on credit, at public or private sale, any or all of the lands and personal property, to collect all rents that might be due and owing, and to distribute the money among the beneficiaries, according to their respective interests in the property, etc. This deed was duly executed and recorded in the state of Alabama.

On the 10th of March, 1881, William E. Jackson, Jr., submitted a proposition in writing to said Newberry, trustee, to lease the property, furnace, machinery, etc., and all buildings thereon, for two years, at the rate of thirty-six hundred dollars per annum, payable quarterly; possession to be given immediately; any rent charge to commence April 1st next; . . . the rent to be paid on condition that the running of the furnace made a sufficient net profit to warrant him in so doing; he to be allowed to charge one hundred dollars per month for compensation, to be included in the expense accounts before arriving at net profit; if the net profit was more than the rent, the overplus was to go to him; if less, the rent was to be rebated to that amount. There was to be furnished not more than twenty-five thousand dollars at the rate of seven per cent interest per annum. If the business should turn out unprofitable, he was to be saved harmless from any balance that might be due of said twenty-five thousand dollars. This is, in substance, the proposition submitted by said Jackson, Jr.

On the same day, a meeting of the owners of the property was held, and the proposition was accepted in writing, and J. T. Newberry was directed to lease the property on

the terms proposed, and upon condition that the property was not to be encumbered to a greater amount than twenty-five thousand dollars, and that no personal liability whatever was to attach to the owners of the property beyond or to a greater extent than the property specified. William E. Jackson, Jr., went immediately into possession of the property, and he was furnished the said sum of twenty-five thousand dollars. While in possession, the defendant in error furnished Jackson, Jr., with the corn sued for in this action, for which said Jackson had given his acceptance in writing, signed William E. Jackson, lessee. William E. Jackson, one of the owners of the property, having died, his executors were sued with the other owners.

The plaintiff below offered William E. Jackson, Jr., as a witness to prove that the lease had been rescinded, and that the owners had appointed him as agent to continue to run the Stonewall Iron Works for them, and that while he ran the works as such agent, the corn sued for was purchased from Bones & Co. for the benefit and use of the owners, and that he did not disclose his agency.

The plaintiffs in error objected to the competency of this witness, because W. E. Jackson, one of the parties to the contract, and whose executors are sued in this action, is dead.

The court overruled this objection, and allowed said William E. Jackson, Jr., to testify, and this is the first error complained of, and we will here notice it.

1. We do not think that this witness was competent to testify in this case, under §3854 of the Code, because he fell within the first exception to that section. " Where one of the parties to the contract or cause of action in issue or on trial is dead, the other party shall not be permitted to testify in his own favor." The issue in the case was, whether the contract of lease between the plaintiffs in error had been rescinded, and whether the debt sued on by Bones was made by W. E. Jackson, Jr., individually or as agent for plaintiffs in error. These are the main

issues on trial, and W. E. Jackson's representatives are parties thereto; W. E. Jackson, Jr., is also a party to these issues, and he is directly interested in the same, so as to relieve himself from liability and to place it upon the plaintiffs in error. He would not be a competent witness at common law, and he is not relieved by the evidence act of 1866, as he falls within the first exceptions to that act. *Daniel vs. Burts,* 72 *Ga.,* 143. This case differs from 64 *Ga.,* 236.

2. The court held, and so charged the jury, that the contract which the trustee, Newberry, made with W. E. Jackson, Jr., as authorized by the owners, did not make him a lessee of the property. In this we think the court was wrong. The property was let to him almost upon the precise terms on which he proposed to lease the same, for two years. The fact that they were to advance the lessee twenty-five thousand dollars, and not exact rent from him if the net proceeds of the property were not sufficient for that purpose, did not make the letting anything but a lease; it did not constitute the lessors and lessees partners, nor the transaction a partnership, nor did it make the lessee an agent for the lessors. The lessors, under the contract with the lessee, were not in any manner whatever personally liable for any debt contracted by him.

3. There were many requests made to the court to charge the jury by the plaintiffs in error, eight in all, which were refused by the court. We are of opinion that they should all have been given, except the third request, which was that a written contract of lease cannot be rescinded verbally without a change of possession, or without a writing dispensing with the same, signed by the lessors. This request might have been proper under the requisite qualifications.

4. The evidence in the case did not authorize the verdict, even if the testimony of William E. Jackson, Jr., had been properly admitted, because he does not show that the lessors consented to or ever agreed that he might surrender the

lease; nor does he show how he became their agent. Two or three of the owners, not a majority of them, could not make him an agent for the rest; indeed, they, the owners, owning this property in common, but each owning a particular interest, would not be bound by the act of any of the owners appointing W. E. Jackson, Jr., agent without their consent.

So we think the court erred in his several rulings as indicated, and that a new trial should be had.

Judgment reversed.